## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x

In re:

EHT US1, Inc., *et al.*,

Defendants.[1]

-------------------------------------------------------x

Evolution Hospitality, LLC and Interstate
Management Company, LLC,

Plaintiffs,

v.

Alan Tantleff, in his capacity as Liquidating
Trustee,

Defendant.

-------------------------------------------------------x

: Chapter 11
:
:
: Case No. 21-10036 (KBO)
:
: (Jointly Administered)
:
:
:
:
: Adv. Proc. No. 22-50264 (KBO)
:
:
:
:
:
:
:

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
## COMPLAINT FOR DECLARATORY RELIEF PURSUANT TO RULE 7001

**COLE SCHOTZ P.C.**
G. David Dean (No. 6403)
Sophie E. Macon (No. 6562)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone:(302) 652-3131
Facsimile: (302) 574-2103
Email:     ddean@coleschotz.com
           smacon@coleschotz.com

Dated: May 23, 2022

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's tax identification number, as applicable, are as follows: EHT US1, Inc.(6703); 5151 Wiley Post Way, Salt Lake City, LLC (1455); ASAP Cayman Atlanta Hotel LLC (2088); ASAP Cayman Denver Tech LLC (7531); ASAP Cayman Salt Lake City Hotel LLC (7546); ASAP Salt Lake City Hotel, LLC (7146); Atlanta Hotel Holdings, LLC (6450); CI Hospitality Investment, LLC (7641); Eagle Hospitality Real Estate Investment Trust (7734); Eagle Hospitality Trust S1 Pte. Ltd. (7669); Eagle Hospitality Trust S2 Pte. Ltd. (7657); EHT Cayman Corp. Ltd. (7656); Sky Harbor Atlanta Northeast, LLC (6846); Sky Harbor Denver Holdco, LLC (6650); Sky Harbor Denver Tech Center, LLC (8303); UCCONT1, LLC (0463); UCF 1, LLC (6406); UCRDH, LLC (2279); UCHIDH, LLC (6497); Urban Commons 4th Street A, LLC (1768); Urban Commons Anaheim HI, LLC (9915); Urban Commons Bayshore A, LLC (2422); Urban Commons Cordova A, LLC (4152); Urban Commons Danbury A, LLC (4388); Urban Commons Highway 111 A, LLC (4497); Urban Commons Riverside Blvd., A, LLC (4661); and USHIL Holdco Member, LLC (4796). The Debtors' mailing address is 3 Times Square, 9th Floor New York, NY 10036 c/o Alan Tantleff (solely for purposes of notices and communications).

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................... 1

RELEVANT FACTS .......................................................................................... 3

    A.  Pre-IPO Hotel Management Agreements ................................................ 3

    B.  May 2019 IPO and Corporate Structure ................................................. 4

    C.  Plaintiffs Consent to Assignment of Pre-IPO HMAs and Release of PropCos from Post-Assignment HMA Liabilities ................................................................ 5

    D.  Evolution Enters into New HMAs Directly with Master Lessees ............... 7

    E.  Defaults and Removal of Woods and Wu ............................................... 8

    F.  Filing of Chapter 11 Cases and Proofs of Claim ...................................... 9

STANDARD OF REVIEW ................................................................................ 10

ARGUMENT ..................................................................................................... 11

  I.  The Complaint Fails to Plead a Viable Claim for Alter Ego/Veil Piercing (Count I) ...... 11

    A.  The Hotel Managers Have Not Plead Facts Sufficient to Establish That Master Lessees and Debtor PropCos Operated as a Single Economic Entity ........................ 11

    B.  The Complaint Does Not Sufficiently Allege Fraud or Injustice by Defendants ....... 17

  II.  The Unjust Enrichment Claim (Count II) Fails as a Matter of Law ................................. 20

CONCLUSION ................................................................................................... 22

63827/0001-43003694v9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*14th & Heinberg, LLC v. Terbaar & Cronley Gen. Contractors, Inc.*,
  43. So. 3d 877, 881 (Fla. 1st DCA 2010) ...............................................................20

*Alhassid v. Nationstar Mortg. LLC*,
  771 F. App'x 965 (11th Cir. 2019) ........................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................12

*Attebury Grain LLC v. Grayn Co.*,
  721 F. App'x 669 (9th Cir. 2018) ..........................................................................21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................12

*Caccomo v. Greenmarine Holdings LLC*,
  2002 WL 1466818 (N.D. Ill. 2002) .......................................................................17

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
  114 Cal. Rptr. 2d 109 (Cal. Ct. App. 2001) ..............................................20, 21, 22

*duPont v. Wyly*,
  61 F.R.D. 615 (D. Del. 1973) ................................................................................10

*EBG Holdings LLC v. Vrredezichts Gravenhage 109 BV*,
  2008 WL 4057745 (Sept. 2, 2008 Del. Ch. 2008) .................................................12

*Fletcher v. Atex, Inc.*,
  68 F.3d 1451 (2d Cir. 1995)..............................................................................11, 17

*Florey Inst. of Neuroscience & Mental Health v. Kleiner Perkins Caufield &
  Byers*, 31 F. Supp. 3d 1034 (N.D. Cal. 2014) .................................................20, 21

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009)...................................................................................10

*In re Foxmeyer Corp.*,
  290 B.R. 229 (Bankr. D. Del. 2003) .................................................11, 12, 14, 18

*Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.)*,
  491 B.R. 747 (Bankr. W.D. La. 2013) .......................................................10, 13, 18

ii

*Off. Comm. of Unsecured Creditors v. Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC)*,
    590 B.R. 211 (Bankr. D. Del. 2018) ...................................................................20

*Interbank Invs. v. Eagle River Water & Sanitation Dist.*,
    77 P.3d 814 (Colo. App. 2003) ...........................................................................20

*Mason v. Network of Wilmington, Inc.*,
    2005 WL 1653954 (Del. Ch. 2005) ....................................................................19

*Mitten v. Weston*,
    615 P.2d 60 (Colo. App. 1980) .....................................................................21, 22

*Off. Comm. of Unsecured Creditors v. Highland Capital Mgmt, L.P. (In re Moll Indus., Inc.)*,
    454 B.R. 574 (Bankr. D. Del. 2011) ...........................................................*passim*

*Off. Comm. of Unsecured Creditors v. Highland Capital Mgmt., L.P. (In re Broadstripe, LLC)*,
    444 B.R. 51 (Bankr. D. Del. 2010) ...............................................................11, 12

*Outokumpu Eng'g Enterprises, Inc. v .Kvaerner Enviropower, Inc.*,
    685 A.2d 724 (Del. Super. Ct. 1996) ..................................................................18

*Paracor Finance, Inc. v. Gen. Elec. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996) ..............................................................................21

*Phillips v. Cty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ...............................................................................10

*Retzlaff v. Horace Mann Ins.*,
    738 F. Supp. 2d 564 (D. Del. 2010) ...................................................................10

*Trevino v. Merscorp, Inc.*,
    583 F. Supp. 2d 521 (D. Del. 2008).................................................4, 11, 12, 18

*In re UD Dissolution Corp.*,
    629 B.R. 11 (Bankr. D. Del. 2021) .....................................................................10

*United States v. Pisani*,
    646 F.2d 83 (3d Cir. 1981).................................................................................12

*Walshe v. Zabors*,
    178 F. Supp. 3d 1071 (D. Colo. 2016).................................................................20

*Youkelsone v. Washington Mutual, Inc. (In re Washington Mut., Inc.)*,
    418 B.R. 107 (Bankr. D. Del. 2009) ....................................................................11

63827/0001-43003694v9

*Werner v. Werner*,
  267 F.3d 288 (3d Cir. 2001)..................................................................................................4

**Other Authorities**

Fed. R. Bankr. P. 7009 ..........................................................................................................10

Fed. R. Civ. P. 9(b) ...............................................................................................................10

Fed. R. Evid. 201(f) ................................................................................................................4

Alan Tantleff (the "Liquidating Trustee"), in his capacity as Liquidating Trustee of EHT US1, Inc. and its affiliated chapter 11 plan debtors (the "Liquidating Debtors"), by and through his undersigned counsel and pursuant to Federal Rule of Civil Procedure ("Federal Rule") 12(b)(6), made applicable to these adversary proceedings by Federal Rule of Bankruptcy Procedure 7012, hereby submits this Brief in support of *Defendant's Motion to Dismiss Complaint for Declaratory Relief Pursuant to Bankruptcy Rule 7001* (the "Motion"), filed contemporaneously herewith.  In addition, the Liquidating Trustee contemporaneously has filed the *Declaration of Sophie E. Macon in Support of Defendant's Motion to Dismiss Complaint for Declaratory Relief Pursuant to Bankruptcy Rule 7001* (the "Macon Declaration"), to which are attached a number of exhibits referenced herein.  In support of the Motion, the Liquidating Trustee respectfully states as follows:

## PRELIMINARY STATEMENT[1]

1.    This lawsuit is a thinly veiled attempt by Evolution and Interstate, as Hotel Managers for the Master Lessees, to hold non-party Debtor PropCos liable for their Master Lessees' breaches of various hotel management agreements ("HMAs").  The Hotel Managers brazenly look to these bankruptcy estates for payment despite having released the Debtors from contractual liability, and despite their own failure to ensure compliance with hotel revenue account controls (and to enforce such controls or otherwise mitigate their losses in the event of non-compliance).  Worse yet, Evolution also failed to pay TOT taxes to the City of Pasadena as required by applicable law, which has resulted in Pasadena (improperly) looking to the estate for payment.  Fortunately, because the equitable claims of alter ego and unjust enrichment fail as a matter of law,

---

[1] All capitalized terms not otherwise defined in this Preliminary Statement have the meaning ascribed to them in the sections below.

1

this case should be dismissed before the Liquidating Trustee is compelled to engage in significant litigation and discovery over the Hotel Managers' own failures and conduct.

2.      To state a plausible claim for alter ego, the Hotel Managers are required to plead a viable combination of seven factors Delaware courts evaluate in determining whether two entities constitute a "single economic entity."  Here, the Hotel Managers rely on boilerplate allegations such as shared addresses, officers, and owners to support their theory that the PropCos are the alter egos of their respective Master Lessees.  Courts in this District have held that such allegations, even when much stronger and more concrete than the ones here, are insufficient to survive a motion to dismiss.  With the exception of Woods' unauthorized execution of the Queen Mary PPP application—which is limited to one hotel in Chapter 7 with no anticipated distribution—the bald allegations of fraud sprinkled throughout the Complaint are nothing more than disguised breach of contract claims directed to the Master Lessees and their principals Woods and Wu, not the Debtors.  Significantly, the Court should not lose sight of the fact that the Debtors were likewise "stiffed" by the Master Lessees and suffered substantial harm due to the conduct of Woods and Wu, leading to these bankruptcy filings.  The picture painted by the Complaint that the Debtors were somehow beneficiaries of Woods' and Wu's conduct could not be further from reality.

3.      In addition to the first alter ego prong, which is woefully deficient, the Hotel Managers must plead facts sufficient to show that the corporate form was the instrumentality used to perpetrate the purported fraud or "fraud like" conduct.  The Hotel Managers' theory lacks any plausibility for numerous reasons.  *First*, the IPO cannot by definition be the instrumentality used to defraud the Hotel Managers when many of the HMAs were in already in existence prior to the IPO.  *Second*, the Hotel Managers freely agreed to the IPO structure, after full disclosure that under the new structure (and following assignment of the HMAs), the PropCos would no longer be liable

2

for future HMA breaches.  *Third*, the purported "fraud" is nothing more than a disguised breach of contract by other parties.  As such, the second alter ego prong also fails as a matter of law.

4.      The unjust enrichment count fares no better.  The law is clear that unjust enrichment cannot be sustained when a contract exists governing the same subject matter.  Here, the Hotel Managers' entire unjust enrichment theory is premised on amounts the Master Lessees failed to pay under the HMAs.  Again, the Hotel Managers—sophisticated parties owned by the largest independent hotel manager in the world—expressly consented to the assignment of the HMAs and the release of the PropCos from future contractual liability.  Evolution's post-IPO HMAs directly with the Master Lessees each also confirm that the Debtors are not liable.  As such, the unjust enrichment count fails as a matter of law and should also dismissed with prejudice, along with Count III (claim allowance) which is premised entirely on the success of Counts I or II.

## RELEVANT FACTS[2]

### A.      Pre-IPO Hotel Management Agreements

5.      In 2014, plaintiff Interstate Management Company, LLC ("Interstate") entered into an HMA with the owner of the Sheraton Denver Tech Center hotel ("Denver").  Complaint, ¶ 12. At the time, Denver was owned by Frank Yuan through certain holding companies.

6.      In 2018, plaintiff Evolution Hospitality, LLC ("Evolution," and together with Interstate, the "Hotel Managers")[3] entered into HMAs with the owners of the following hotels: (i) Embassy Suites Anaheim North ("Embassy Anaheim"); (ii) Holiday Inn Resort Orlando Suites – Waterpark ("Orlando"); (iii) Sheraton Pasadena Hotel ("Pasadena"); and (iv) The Queen Mary

---

[2] For the purpose of the Motion, the Liquidating Trustee assumes the facts in the Complaint to be true, although nothing herein is intended to constitute an admission of any factual assertion in the Complaint or its supporting documents.

[3] The Hotel Managers are affiliated entities.

Long Beach (the "Queen Mary").[4]  Complaint, ¶ 12.  At the time, each Evolution managed hotel except the Queen Mary was indirectly owned and controlled by Taylor Woods ("Woods") and Howard Wu ("Wu").  Complaint, ¶ 10.  The 2018 Evolution HMAs and the Interstate HMA are collectively referred to herein as the "Pre-IPO HMAs."

**B.    May 2019 IPO and Corporate Structure**

7.    On May 24, 2019, Debtor Eagle Hospitality Real Estate Investment Trust ("EH-REIT")—a newly formed Singapore trust—indirectly acquired the equity interests in an entity called USHIL Holdco Member, LLC, which, in turn, owned (or in the case of the Queen Mary, leased) the twelve (12) Woods and Wu hotels property owners ("PropCos").  EH-REIT also simultaneously indirectly acquired the equity interests in an entity called CI Hospitality Investment, LLC, which indirectly owned the equity in the six (6) Frank Yuan PropCos.[5]  This acquisition was funded in part by the issuance of ownership units in EH-REIT, which were offered to the public through an initial public offering (the "IPO") on the Mainboard of the Singapore Exchange Securities Trading Limited.  *See* Opinion, p. 6.

8.    Upon the IPO closing, the PropCos were managed by non-Debtor Eagle Hospitality REIT Management Pte. Ltd. (the "Former REIT Manager"), which was owned by Wu (51%) and

---

[4] The Queen Mary was leased from the City of Long Beach by the Debtor "PropCo" and subleased to its Master Sublessee.  The Queen Mary lessee is sometimes collectively referred to as a PropCo, even though it possessed a lease interest in the property and did not own fee title to the Queen Mary hotel.  On February 8, 2022, the chapter 11 case of Urban Commons Queensway, LLC, the debtor property that held the long-term lease for the Queen Mary (the "Queen Mary PropCo"), was converted to chapter 7.  The Complaint improperly includes a request for allowance of the Queen Mary proof of claim [Claim No. 664], without naming the Queen Mary PropCo as a defendant.  *See* Macon Declaration, Exhibit H (Queen Mary Proof of Claim No. 664).

[5] The distinction between the hotels contributed by Woods and Wu and Mr. Yuan is for background purposes only.  It is also undisputed.  The Court can take judicial notice of undisputed facts in a motion to dismiss.  *See, e.g.*, *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001) (courts may take judicial notice of facts that are "not subject to reasonable dispute," including where such facts are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 526–27 (D. Del. 2008) ("While the [Federal Rules of Evidence] allow a court to take judicial notice at any stage of the proceeding, Fed. R. Evid. 201(f), ... it should be done sparingly at the pleadings stage.")

Woods (49%). Prospectus, p. 278.[6] The Former REIT Manager was managed by a board of seven directors, composed of two non-independent directors (Woods and Wu), four independent directors (Davy Lau, Tarun Kataria, Tan Wee Peng Kelvin, and Carl Gabriel Florian Stubbe), and one executive director (Salvatore G. Takoushian). *Id.* at 280. The Former REIT Manager was also subject to the oversight of EH-REIT under the terms of a Deed of Trust, including the right of EH-REIT to remove the Former REIT Manager. *See id.* at 321 (discussing removal rights of EH-REIT).

9.      As part of the IPO, each PropCo entered into a substantially similar Master Lease Agreement (each, a "Master Lease") with one of eighteen (18) newly formed Woods and Wu controlled entities (each, a "Master Lessee"). Complaint, ¶¶ 17–18; *see* Opinion, p. 6. As the Court previously held, "[t]he Master Leases governed the rights and obligations of the PropCos and the Master Lessees, including provisions that the Master Lessees would be entirely responsible for operating the Hotels (including the Hotels for which Evolution [and Interstate] served as manager under the [pre-IPO] HMAs)." Opinion, p. 7.[7]

**C.      Plaintiffs Consent to Assignment of Pre-IPO HMAs and Release of PropCos from Post-Assignment HMA Liabilities**

10.      Concurrently with the IPO, each Pre-IPO HMA was assigned by the applicable PropCo to the applicable Master Lessee. Complaint, ¶¶ 17 & 30; *see* Opinion, pp. 7–11. As the Court previously held, "[t]he purpose and effect of each Assignment Agreement was to transfer

---

[6] Complaint, Exhibit 3.

[7] References herein to the "Opinion" refer to the Court's *Opinion* [Docket No. 2129], issued on March 15, 2022 regarding the (i) *Debtors' Objection to Proofs of Claim Filed by Evolution Hospitality, LLC* [Docket No. 1324] (the "Evolution Claim Objection") and (ii) *Debtors' Objection to Proof of Claim Filed by Interstate Management Company, LLC* [Docket No. 1325] (the "Interstate Claim Objection" and, together with the Evolution Claim Objection, the "Claim Objections").

and assign in full all the applicable pre-IPO PropCo's rights and obligations under the relevant [pre-IPO HMAs] to the applicable Master Lessee."  Opinion, p. 7; *see* Complaint, ¶ 19.

11.      Each pre-IPO HMA with Evolution at issue here (except the Queen Mary, for which consent was later separately obtained) contained an advanced consent to assignment and assignor release.  The advanced consent provided that any permitted assignment would be subject to the following conditions: (i) assignee shall assume the obligations under the HMA, and (ii) assignor shall not be released from "obligations under the agreement arising or occurring prior to the assignment . . . ."[8]  As part of the May 2019 IPO, and pursuant to Evolution's advanced consents (either pursuant to the HMA's assignment provision or pre-IPO letter agreement), the PropCos did in fact assign these Pre-IPO HMAs to Master Lessees under assignment agreements.[9]  The assignment agreements further provided that the Master Lessees—not the PropCos—were responsible for post-assignment liabilities under the HMAs.

12.      The HMA with Interstate for Denver did not contain an advanced consent to assignment and release of post-assignment liabilities.  As such, prior to this assignment, on or about April 4, 2019, Interstate executed a letter agreement (the "Interstate Consent Letter").  *See* Proof of Claim No. 657, Ex. A.[10]  In that letter, Interstate expressly consented to the assignment

---

[8] Copies of the HMAs for each Evolution and Interstate hotel, including the assignment agreements for each Pre-IPO HMA, were filed as attachments to the Hotel Managers' Proofs of Claim (as defined herein).  *See* Macon Declaration, Exhibit C (Proof of Claim No. 659), at Ex. A, § 12.1 (Orlando HMA assignment consent provision); Macon Declaration, Exhibit E (Proof of Claim No. 661) at Ex. A, § 12.1 (Pasadena HMA assignment consent provision); Macon Declaration, Exhibit F (Proof of Claim No. 662) at Ex. A, § 12.1 (Embassy Anaheim HMA assignment consent provision).  On May 10, 2019 Evolution also executed a letter agreement concerning the Orlando location, reaffirming its "consent to the assignment of the HMA by the [Pre-IPO PropCo] to the [applicable Master Lessee] upon the consummation of the IPO Transactions."  *See* Macon Declaration, Exhibit C (Proof of Claim No. 659), at Ex. A.  On May 24, 2019, Evolution also executed a consent letter for the Queen Mary.  *See* Macon Declaration, Exhibit H (Proof of Claim No. 664), at Ex. B.

[9] *See* Macon Declaration, Exhibit C (Proof of Claim No. 659), at Ex. A (Orlando *Assignment and Assumption Agreement*); Macon Declaration, Exhibit E (Proof of Claim No. 661), at Ex. A (Pasadena *Omnibus Assignment and Assumption of Contracts and Other Obligations and Assets*); Macon Declaration, Exhibit F (Proof of Claim No. 662), at Ex. A (Embassy Anaheim *Omnibus Assignment and Assumption of Contracts and Other Obligations and Assets*).

[10] Macon Declaration, Exhibit A.

6

of its HMA, subject to the preservation of claims against the PropCo that arose *prior to* the assignment. *Id.* As such, Interstate agreed that the Denver PropCo—now owned by EH-REIT—would not be liable for any post-assignment amounts due under the HMAs. As part of its agreement to release the Denver PropCo from liability under the HMA, Interstate required Woods and Wu to reaffirm their personal guaranty obligations in the letter. Following the Interstate Consent Letter, the Denver PropCo in fact assigned the Interstate HMA to the applicable Master Lessee via standalone agreement dated May 24, 2019. Opinion, p. 10. That assignment agreement also provided that the Master Lessees—not the PropCos—would be liable under the HMAs going forward.

13.     As a result of the above-referenced agreements—and as previously held by the Court in analyzing the subsequent Caretaker Agreements which acknowledged these assignments—there is no dispute that the PropCos were released from post-assignment contractual liability under the respective HMAs.[11]

### D.     Evolution Enters into New HMAs Directly with Master Lessees

14.     After consenting to the assignments of their existing HMAs to the Master Lessees, Evolution entered into three new HMAs for the following hotels: (i) Holiday Inn & Suites San Mateo ("San Mateo"); (ii) The Westin Sacramento ("Sacramento"); and (iii) Holiday Inn & Suites Anaheim ("Holiday Inn Anaheim"). *See* Complaint, ¶ 20; *see* Proofs of Claim Nos. 658, 660, & 663[12] (attaching HMAs). Significantly, Evolution entered into these HMAs (together,

---

[11] The Liquidating Trustee also contends that the PropCos were released from alternative equity claims for amounts due under the HMAs as well. The Liquidating Trustee is not raising "release" of the equitable claims as part of this motion to dismiss, and it is not necessary to reach a dismissal. The issue for the purpose of this motion to dismiss is whether such equitable theories can be adequately pled given the impact of an undisputed release of contractual liability on a contract covering the same subject matter. The Liquidating Trustee assumes for the purpose of this motion to dismiss that the equitable claims were not released.

[12] Macon Declaration, Exhibits B, D, and G.

the "Post-IPO HMAs") directly with the Master Lessees under the new post-IPO structure—not the PropCos. *Id.*, ¶¶ 20-21. In other words, having already consented to the prior assignments and with full knowledge that the PropCos would not be liable going forward, Evolution entered into direct contractual agreements with the Master Lessees to manage three additional hotels.

### E.   Defaults and Removal of Woods and Wu

15.   Beginning with January 2020 rent, the Master Lessees failed to pay the rent due to the PropCos under the Master Leases. Complaint, ¶ 50. The Master Lessees also failed to maintain balances in their operating accounts equal to the required minimum amount (as required under the HMAs) necessary to fund various operating expenses accrued by the Evolution and Interstate-managed Hotels. Complaint, ¶¶ 26–29; Opinion, p. 15 (finding that the Master Lessees first defaulted under third-party HMAs "[a]s early as September 2019").

16.   Because of the Master Lessees' failure to cure the defaults under both the Master Leases and the HMAs, a special committee of directors of the Former REIT Manager (the "Special Committee") was appointed pursuant to a resolution dated March 26, 2020. Complaint, ¶ 59; Opinion, p. 15. The Special Committee did not include Woods and Wu. *Id.* Rather, the Special Committee consisted of the other five members of the Former REIT Manager's board. *See* Prospectus, p. 278.[13]

17.   On April 13, 2020, the Special Committee retained FTI and appointed Alan Tantleff as Chief Restructuring Officer of the Eagle Hospitality Group. Complaint, ¶ 65; Opinion, p. 15. On April 24, 2020, Woods and Wu were removed as authorized signatories and officers of the PropCos. Complaint, ¶ 60; Opinion, p. 15. On May 20, 2020, Woods and Wu formally resigned as directors of the Former REIT Manager. Complaint, ¶ 63.

---

[13] Complaint, Exhibit 3.

18.     Within this same time period, between March and August 2020, the PropCos sent notices of default to the Master Lessees.  Opinion, p. 16.  On September 21, 2020, the PropCos served 10-day notices of termination with respect to each of the Master Leases.  Complaint, ¶ 69; Opinion, p. 16.  Thereafter, the PropCos initiated unlawful detainer actions in state courts throughout the country to regain possession of the hotels and recover damages resulting from the Master Lessees' ongoing defaults.  Complaint, ¶ 70; Opinion, p. 16.  On December 30, 2020, the Former REIT Manager was removed as Manager of EH-REIT.  Complaint, ¶ 63; Opinion, p. 15.

F.     **Filing of Chapter 11 Cases and Proofs of Claim**

19.     On January 18, 2021, the Debtors (other than EH-REIT) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Complaint, ¶ 71.  On January 27, 2021, the chapter 11 case of EH- REIT was commenced.  Complaint, ¶ 71.

20.     On July 12, 2021, the Hotel Managers filed proofs of claim against the PropCos for amounts due under the HMAs.  *See* Complaint, ¶ 73.  On October 7, 2021, the Debtors filed the Claim Objections.  Complaint, ¶ 78.  On October 25, 2021, the Hotel Managers filed an Omnibus Response to the Claim Objections [Docket No. 1449], and on November 2, 2021, the Debtors filed an Omnibus Reply [Docket No. 1563].  The parties thereafter agreed to submit the briefing to the Court for a ruling on the papers, prior to commencing discovery.

21.     On March 15, 2022, the Court entered an Order and Opinion finding that "there is no contractual privity between Interstate and the Debtors or Evolution Hospitality and the Debtors, and thus, there can be no claim for breach of contract by either Interstate or Evolution Hospitality." Opinion, p. 22.  The Court declined to rule on the equitable arguments of alter ego and unjust enrichment raised for the first time by Evolution and Interstate in their responses to the Claim Objections, instead directing that such claims be adjudicated via an adversary proceeding. Opinion, pp. 22–23.  On April 21, 2022, the Hotel Managers filed the instant Complaint.

9

## STANDARD OF REVIEW

22.     "The applicable inquiry under [Federal] Rule 12(b)(6) is well-settled. Courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  However, "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (*quoting Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  "Although heightened fact pleading is not required, enough facts to state a claim to relief that is plausible on its face must be alleged." *Retzlaff v. Horace Mann Ins.*, 738 F. Supp. 2d 564, 567 (D. Del. 2010) (internal quotations omitted).  Therefore, "[t]o prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible.  This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fowler*, 578 F.3d at 210 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

23.     Pleadings alleging actual fraud are analyzed under Rule 9(b) rather than Federal Rule(b)(6).[14]  "Mere conclusory allegations of fraud, couched in . . . bare statutory language" are not sufficient. *duPont*, 61 F.R.D. at 630.   "Rule 9(b) applies not only to fraud claims, but also to "non-fraud" claims that are based upon allegations of fraud." *See Goodman v. H.I.G. Capital, LLC (In re Gulf Fleet Holdings, Inc.)*, 491 B.R. 747, 761 (Bankr. W.D. La. 2013) (applying Delaware law).

---

[14] *In re UD Dissolution Corp.*, 629 B.R. 11, 30 (Bankr. D. Del. 2021) (citing *Beskrone v. OpenGate Cap. Grp. (In re Pennysaver USA Publ'g, LLC)*, 587 B.R. 445, 459-60 (Bankr. D. Del. 2018)).  Under Rule 9(b), fraud "must be pled with particularity." *In re UD Dissolution Corp.*, 629 B.R. 11, 30 (Bankr. D. Del. 2021) (citing *Rosener v. Majestic Mgmt. (In re OODC, LLC)*, 321 B.R. 128, 140 (Bankr. D. Del. 2005)); Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009. Rule 9(b) "requires sufficient factual specificity to 'apprise defendants of charges against them.'" *duPont v. Wyly*, 61 F.R.D. 615, 630 (D. Del. 1973) (quoting *Gottlieb v. Sandia Am. Corp.*, 25 F.R.D. 223, 224 (E.D. Pa. 1964)).

# ARGUMENT

## I.    The Complaint Fails to Plead a Viable Claim for Alter Ego/Veil Piercing (Count I)

24.    Delaware courts[15] will pierce the corporate veil only if the plaintiff shows that the two entities (1) operated as a single economic entity such that it would be inequitable for a court to uphold a legal distinction between them, *and* (2) there has been an element of fraud, injustice or inequity in the use of the corporate form.[16]  The Hotel Managers have failed to plead facts sufficient to satisfy either of these two elements.

### A.    The Hotel Managers Have Not Plead Facts Sufficient to Establish That Master Lessees and Debtor PropCos Operated as a Single Economic Entity

25.    In Delaware, courts apply a multi-factor test to determine whether a "single economic entity" sufficient to satisfy the first prong exists.[17]  These factors are:

(1) undercapitalization;
(2) failure to observe corporate formalities;
(3) nonpayment of dividends;
(4) the insolvency of the debtor corporation at the time;
(5) siphoning of the corporation's funds by the dominant stockholder;
(6) absence of corporate records; and
(7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.

*In re Broadstripe, LLC*, 444 B.R. 51, 102 (Bankr. D. Del. 2010).[18]  "While no single factor is dispositive, some combination is required."  *Moll.*, 454 B.R. at 588 (citing *Broadstripe*, 444 B.R.

---

[15] Applying Delaware choice of law rules, Delaware courts look to the state of formation of a company to determine what law applies to alter ego claims.  *See Youkelsone v. Wash. Mut., Inc. (In re Wash. Mut., Inc.)*, 418 B.R. 107, 113 (Bankr. D. Del. 2009).  Here, each of the relevant Master Lessees and Debtor PropCos are limited liability companies organized in the state of Delaware.  *See* Macon Declaration, Exhibits A–G (Proofs of Claim Nos. 657–663) (each at Ex. A).  Accordingly, Delaware law applies.

[16] *See, e.g.*, *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) (applying Delaware law); *In re Moll Indus., Inc.*, 454 B.R. 574, 587 (Bankr. D. Del. 2011); *In re Foxmeyer Corp.*, 290 B.R. 229, 235 (Bankr. D. Del. 2003).

[17] *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528–29 (D. Del. 2008) (citing *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981)); *Off. Comm. of Unsecured Creditors v. Highland Capital Management, L.P. (In re Broadstripe, LLC)*, 444 B.R. 51, 101 (Bankr. D. Del. 2010).

[18] *See also, e.g.*, *Pisani*, 646 F.2d at 88 (listing factors);*Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008) (applying factors).

at 101).   The Hotel Managers have failed to plead adequate facts to support a viable combination

of these factors for purposes of a motion to dismiss.[19]

> i.    *Hotel Managers Plead No Facts Pertinent to Factors 3, 4, and 6*

26.    With respect to the third (whether a dividend was paid), fourth (whether the Master

Lessees, the "debtor" for purpose of this factor, were insolvent at the time of the relevant

agreements), and sixth (whether there was an absence of corporate records) factors, the Hotel

Managers plead *no* pertinent facts.

> ii.    *Hotel Managers Plead No Relevant Facts as to Defendants Pertinent to Factors 1*
> *and 5*

27.    With respect to the first factor—undercapitalization—it is not enough to establish

that an entity is undercaptialized from its inception; a plaintiff must allege that any such

undercapitalization was *caused by* acts of the target defendant (in most cases, the parent company).

*See Foxmeyer*, 290 B.R. at 244.[20]   The Complaint fails to plausibly plead this factor for multiple

reasons.   *First*, the Complaint simply includes no allegations to support the conclusory statement

that the Master Lessees were undercapitalized in the first place.   *See* Complaint, p. 2 ("Taylor

Woods . . . and Howard Wu . . . implemented a sham corporate and lease structure for the purpose

of siphoning money away from the entities with whom Evolution contracted, thereby ensuring

these entities were undercapitalized and unable to pay their debts.").   *Second*, even if this

conclusory allegation was sufficient under *Twombly* and *Iqbal*, the Hotel Managers attribute such

---

[19] *See, e.g.*, *Trevino v. Merscorp., Inc.*, 583 F. Supp. 2d 521 (2008); *In re Moll Industries Inc.*, 454 B.R. 574 (Bankr. D. Del. 2011); *EBG Holdings LLC v. Vrredezichts Gravenhage 109 BV*, 2008 WL 4057745 (Sept. 2, 2008 Del. Ch. 2008).

[20] *See also Trevino*, 583 F. Supp. 2d at 530 (quoting *Trustees of Nat'l Elevator Indus. Pension, Health Benefit and Educational Funds v. Lutyk*, 332 F.3d 188, 197 (3d Cir. 2003) ("A shortage of capital, as with all the factors of the alter ego doctrine, is not per se a reason to pierce the corporate veil.... Rather, the inquiry into corporate capitalization is most relevant for the inference it provides into whether the corporation was established to defraud its creditors or other improper purpose such as avoiding the risks known to be attendant to a type of business.")).

undercapitalization to Woods and Wu—not the Debtors. *See id.* The Hotel Managers do not, and cannot, plead facts to show that the Debtors (as passive lessors) took any action to render the Master Lessees undercapitalized.

28.     With respect to the fifth factor—whether the funds were "siphoned"—the Complaint contains no viable supporting facts for their bald allegation of siphoning. At most, the Complaint alleges that *Woods and Wu*, in their individual capacity, siphoned funds from the Master Lessees to their own non-Debtor entities. *See* Complaint, ¶ 55 (alleging facts regarding "the siphoning of funds by the *Urban Commons Lessees*") (emphasis added). Woods and Wu are not defendants in this action, nor does their purported "siphoning funds" from the Master Lessee have any bearing on an alter ego analysis targeting liability against the PropCos.

29.     The only potential "siphoning of funds" or "undercapitalization" allegation directed to the PropCos relates to the bald (and baseless) assertion that the PropCos "knew or should have known they were entitled to receive rent from the net hotel operating revenues rather than the gross hotel operating revenues." Complaint at ¶ 52; *see also id.* at ¶¶ 25, 31. In leveling this allegation against the Propcos, the Hotel Managers identify no rent payment that was made in violation of any provision of a Master Lease. As such, the Hotel Managers have not established that the PropCos received payments outside of the Master Leases' provisions, they have not stated a claim to support this fact of the first alter ego prong. *See Gulf Fleet*, 491 B.R. at 789 (payments made pursuant to contacts between the parties "would not support the claim of 'siphoning of funds'"); *Moll*, 454 B.R. at 590 (payments pursuant to a note did not constitute "siphoning of funds").

       *iii.*     <u>*Factor 7 Cannot be Satisfied in this Case as Matter of Law*</u>

30.     To satisfy the seventh factor—whether the Master Lessees were merely a "façade" for the operations of its shareholders—the Complaint would have to allege sufficient facts to show that the IPO was designed to avoid paying the Hotel Managers. Such an argument would stretch

13

the bounds of reality beyond any recognition.  When a structure is set up for an otherwise legitimate business purpose, this factor is not met.  *See Foxmeyer*, 290 B.R. at 244.[21]  It is undisputed that the 2019 IPO was established for a legitimate business purpose to raise investments and properly structure the post-IPO entities under Singapore and other laws and regulations.  These purposes and structures were laid out in significant detail in the Prospectus—a document on which the Hotel Managers rely heavily in the Complaint.  As such, the conclusory allegations sprinkled through the Complaint suggesting that the IPO was somehow set up as a means to avoid paying under the HMAs—a structure the Hotel Mangers expressly consented to—defies all credulity and is the definition of a claim that has no plausibility.

iv.    *Facts Plead as to Factor 2—Failure to Observe Corporate Formalities—Are Insufficient on Their Own to Establish First Prong of Alter Ego Claim*

31.    With respect to the second factor—failure to observe corporate formalities—the Hotel Managers allege that: (i) "the two sides" shared office space and personnel; (ii) the Master Lessees and the Debtor PropCos shared common ownership; (iii) Woods and Wu were the sole directors of the Debtor PropCos (despite that they had no directors at all) and authorized signatories for the same; and (iv) Woods executed an unauthorized Payment Protection Plan ("PPP") loan application for the Queen Mary after being removed as a signatory.  Addressing each in turn:

•    Shared Office Space and "Personnel".  The Hotel Managers alleges that the Former REIT Manager and Urban Commons, LLC shared office space.  *See* Complaint, ¶¶ 46–47. However, neither the Former REIT Manager nor Urban Commons, LLC are Debtors, and their space sharing arrangement is meaningless.  The Complaint also badly asserts that the Debtor PropCos and the Urban Commons Lessees shared office space.  *See* Complaint, ¶ 40.  But the

---

[21] In *Foxmeyer*, the court held that plaintiff had "utterly failed" to demonstrate that the subsidiary entity "simply functioned as a façade" for its parent, where evidence showed that "[subsidiary] existed in order to carry on [parent]'s pharmaceutical distribution business" on behalf of parent holding companies.  *Foxmeyer*, 290 B.R. at 244.

14

Complaint fails to disclose the undisputed fact that there was no need for the PropCo to "share" any space, as the Debtor PropCos were mere passive investment vehicles with no employees. This fact therefore is entirely irrelevant and places form over substance (and reality).

- <u>Common Ownership</u>. The Complaint alleges that Woods and Wu collectively owned 100% of the Master Lessees, and also owned a combined ownership interest in EH-REIT (and, by extension, the Debtor PropCos) amounting to 13.69% of the outstanding equity in the Debtor PropCos. *See* Complaint, ¶¶ 32–33. This so-called "common ownership" glosses over the critical fact that, while Woods and Wu indirectly owned 100% of the Master Lessee, they only owned a small (approximately 13%) non-controlling indirect percentage in the Debtor PropCos. The fact that Woods and Wu owned a small indirect percentage of the Debtor PropCos, thus, has no bearing on any alter ego analysis.

- <u>Common Officers and Directors</u>. The Complaint alleges that the Master Lessees and the Debtor PropCos shared certain officers and/or directors and had the same "ultimate decision makers." Complaint, ¶ 90. While the Debtor PropCos were, for a time, managed by the Former REIT Manager—an entity owned by Woods and Wu—Woods and Wu were only two of seven directors of the Former REIT Manager. The notion that Woods and Wu were the "ultimate decision makers" of the REIT Manager is belied by the undisputed fact that they were excluded from the Special Committee, which was followed by their complete resignation from the REIT Manager board. The REIT Manager itself was also subject to removal by the REIT Trustee, which ultimately occurred in December 2020. Moreover, while Woods and Wu were at one point officers and signatories of the PropCos, those roles were also eliminated. Finally, the significant litigation between the Master Lessees and PropCos renders the Complaint's conclusory allegation that Woods and Wu were the "ultimate decision makers" of the PropCos implausible.

- <u>Queen Mary PPP Application</u>. The Complaint also alleges that Woods and Wu executed a PPP loan application for the Queen Mary hotel on behalf of Debtor Urban Commons Queensway, LLC ("<u>UCQ</u>"), without authority. Complaint at § 61. While this is certainly true—and resulted in a judgment by this Court against Woods and Wu—that conduct has no bearing on the Hotel Managers' claims against the Liquidating Debtors, which are the only Debtors likely to make an distribution on account of allowance general unsecured claims. Conversely, unlike the claims against the Liquidating Debtors, any unsecured claim against UCQ (which is in Chapter 7) is unlikely to result in any distribution.[22]   As such, Woods' unauthorized signing of the PPP application for the Queen Mary and he was removed as an officer simply has no weight in any alter ego analysis under the facts of this case.

32. In sum, even accepting all of the Hotel Managers' allegations as true, it would not be nearly enough to survive a motion to dismiss. In *Moll*, 454 B.R. 574 at 590, this Court dismissed a complaint on alter ego grounds where "[t]he only two factors that support the [plaintiff's claim were] a failure to observe corporate formalities and failure to pay a dividend." In doing so, as to factor 2, the Court held that "[a]llegations such as using the same office and sharing officers and directors do not by themselves establish a single enterprise." *Id.* at 590–91." *See also Caccomo v. Greenmarine Holdings LLC*, 2002 WL 1466818, at *5 (N.D. Ill. 2002) (applying Delaware veil piercing law, holding that common officers and directors and merely sharing executive offices does not demonstrate control sufficient to create long-arm jurisdiction in Illinois).

---

[22] As noted above, the Complaint also fails to properly name the Queen Mary PropCo as a defendant, while asking for a declaratory judgment as to the allowance of that claim.

63827/0001-43003694v9

33.     Here, the allegations are even more sparse than in *Moll*, in which the Debtors pled strong facts to support failure to observe corporate formalities, along with the failure to pay a dividend.  Indeed, other than the irrelevant unauthorized Queen Mary PPP application, the Hotel Managers plead no facts concerning a disregard of any corporate formality.  Instead, the Complaint is littered with opaque suggestions that Woods and Wu were on "both sides of the transaction." But this too is far from plausible, given the significant litigation that ensured between Woods' and Wu's Master Lessees and the Debtors prior to and during these cases.  Entities on both sides of a transaction do not sue the other.

34.     Accordingly, the Hotel Managers have not come close to pleading enough to survive a motion to dismiss as to the first alter ego prong.

**B.      The Complaint Does Not Sufficiently Allege Fraud or Injustice by Defendants**

35.     Assuming, *arguendo*, that the first prong of alter ego could be met, the Complaint still must be dismissed because it fails to satisfy the second prong of the test.  To satisfy this prong, the plaintiff must plead facts "demonstrat[ing] an overall element of injustice or unfairness."[23] The "requisite injustice or unfairness . . . . is . . . not simple in nature"—to establish a claim for alter

---

[23] *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir. 1995) (citing *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, 1989 WL 110537, at *5 (Del. Ch. 1989)) (applying Delaware law).

ego relief under Delaware law, "fraud *or something like it is required*."[24]  Further, to satisfy the second alter ego prong, the requisite fraud or injustice must, "in particular, 'be found in the *defendants'* use of the corporate form.'"[25]  In other words, it is not sufficient for the plaintiffs to allege mere fraud; the corporate form must be the instrumentality used to commit the bad act.

36.     To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must allege facts supporting an inference of fraud *beyond* those giving rise to the underlying cause of action or alleged right to payment.[26]  Specifically, "[t]he 'injustice' must be more than the breach of contract alleged in the complaint."[27]  Further, plaintiffs seeking to pierce the corporate veil must prove "reasonable reliance and intent to deceive."  *Gulf Fleet*, 491 B.R. at 788 (quoting *Moll*, 454 B.R. at 591)).  Finally, as discussed in the standard of review section above, to satisfy Federal Rule(b)(6), any allegations of fraud to support the second alter ego prong must satisfy the heightened pleading standard of Rule 9(b).

37.     Here, the Hotel Managers have not, and cannot, satisfy the second alter ego prong for multiple independent reasons.  *First*, prior to the IPO, several HMAs were already in existence. For this reason alone, the Hotel Managers cannot blame the IPO's 2019 structure as the purported

---

[24] *In re Foxmeyer Corp.*, 290 B.R. 229, 236 (Bankr. D. Del. 2003) (quoting *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989) (emphasis added)); *see also Off. Comm. Of Unsecured Creditors v. Highland Cap. Mgmt., L.P. (In re Moll Indus., Inc.)*, 454 B.R. 574, 591 (Bankr. D. Del. 2011) (dismissing alter ego claim under 12(b)(6) where allegedly fraudulent conduct was "common and legitimate" practice, even if undertaken in self-interest and plaintiff alleged legal conclusions); *Trevino*, 583 F. Supp. 2d at 529 (quoting *Board of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002)) (to survive a motion to dismiss, plaintiffs alleging alter ego liability under Delaware law must plead facts "sufficient to support an inference that [defendants] are using 'an independent corporation' to 'defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise evade the law.'").

[25] *Foxmeyer*, 290 B.R. at 236 (quoting *Mobil Oil*, 718 F. Supp. at 268 (emphasis added)).

[26] *See Foxmeyer*, 290 B.R. at 236 (quoting *Mobil Oil*, 718 F. Supp. at 268 ("[T]he underlying cause of action[, at least by itself,] does not supply the necessary fraud or injustice.")).

[27] *Outokumpu Eng'g Enterprises, Inc. v .Kvaerner Enviropower, Inc.*, 685 A.2d 724, 729 (Del. Super. Ct. 1996); *see Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 529 (D. Del. 2008) (holding that acts giving rise to the cause of action are not on their own sufficient to "allege abuse or injustice of the corporate form" to survive motion to dismiss alter ego claim).

basis for Woods and Wu not doing what they were supposed to do under previously existing contracts with the HMAs. *Second*, even if HMAs were not already in existence as of the IPO, any suggestion of wrongful conduct in the Complaint is directed to their Master Lessee counterparties, not the PropCos themselves.

38.     *Third*, the Hotel Managers expressly *consented to* the corporate structure put in place by the IPO. After having expressly consented to the IPO structure and agreeing to release the PropCos from liability going forward, the Hotel Managers cannot now claim that there was some type of fraud or other inequity that should entitle them to disregard their prior agreements. The only injustice here would be if the PropCos are held liable for amounts under the very HMAs from which the Hotel Managers agreed to release them.

39.     *Fourth*, as with the first alter ego prong, the allegations of a shared address, and some overlap in officers, directors and ownership do not come close to meeting the standard of showing that the IPO structure was somehow used as the vehicle for purported fraudulent conduct. In *Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954 (Del. Ch. 2005), the Chancery Court held that "[b]eing the sole shareholder of two different legal entities, housed in the same office building and possession the same phone number at separate (and not sequential times) do not constitute a sham that 'exists for no other purpose than as a vehicle for fraud." The Court should reach the same conclusion here, where the so-called "commonalities" of ownership are even more tenuous than they were in *Mason*, given that Woods and Wu only indirectly owned 13% of the PropCos. For these reasons, the Hotel Managers cannot establish the second alter ego prong, and Count I should therefore be dismissed with prejudice.

## II.    The Unjust Enrichment Claim (Count II) Fails as a Matter of Law[28]

40.    The Hotel Managers cannot sustain unjust enrichment claims against the PropCos as to amounts owed by the Master Lessees under the HMAs.

41.    The general elements of unjust enrichment are (i) defendant's receipt of a benefit and (ii) unjust retention of that benefit at the plaintiff's expense.[29]  Even if those elements could be met, a claim for unjust enrichment cannot survive as matter of law where there exists between the parties a valid express contract covering the same subject matter.[30]  The existence of a contract of the same subject matter likewise bars unjust enrichment when the contract is between the

---

[28] A claim for unjust enrichment is governed by state law. Delaware choice of law principles apply the "most significant relationship test" to determine which jurisdiction's law will apply to unjust enrichment claims.  *Off. Comm. of Unsecured Creditors v. Comvest Grp. Holdings, LLC (In re HH Liquidation, LLC)*, 590 B.R. 211 (Bankr. D. Del. 2018) (citing *In re Fleming Cos., Inc.*, 347 B.R. 163, 168 (Bankr. D. Del. 2006)).  Here, five of the hotels subject to the HMAs at issue are located in California, one is located in Colorado, and one is in Florida.  Accordingly, California, Colorado, and Florida state law (respectively) applies.  *See* Opinion, p. 18 at n.32 (noting that California, Colorado, and Florida state law apply to the HMAs); *see also* Macon Declaration, Exhibit A (Proof of Claim No. 657) at Ex. A, § 23.6 (electing Colorado state law with respect to Interstate HMA).  The Evolution HMAs do not include choice of law provisions.

[29] *Florey Inst. of Neuroscience & Mental Health v. Kleiner Perkins Caufield & Byers*, 31 F. Supp. 3d 1034, 1048 (N.D. Cal. 2014) (citing *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (Cal. Ct. App. 2008).  The elements are substantially similar under Colorado and Florida law, where the other two (2) hotels in this dispute are located.  *See, e.g.*, *Walshe v. Zabors*, 178 F. Supp. 3d 1071, 1087 (D. Colo. 2016) (citing *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009) ("The elements of unjust enrichment are: (1) at the expense of a plaintiff; (2) a defendant received a benefit; (3) under circumstances making it unjust for the defendant to retain the benefit without paying for it."); *14th & Heinberg, LLC v. Terbaar & Cronley Gen. Contractors, Inc.*, 43. So. 3d 877, 881 (Fla. 1st DCA 2010) (to succeed on a claim for unjust enrichment, a plaintiff must establish that (1) it "has conferred a benefit on the defendant;" (2) "the defendant has knowledge of the benefit;" (3) "the defendant has accepted or retained the benefit conferred;" and (4) "the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.").

[30] *Florey*, 31 F. Supp. 3d at 1050 (dismissing claim for unjust enrichment where it was "clear that the parties' rights to payment were the subject of . . . integrated contracts [which] exclude [p]laintiff's theory (despite the fact that they claim their suit is not based on the contracts)"); *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 114 Cal. Rptr. 2d 109, 125–26 (Cal. Ct. App. 2001) ("[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights."); *Interbank Invs. v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003) ("In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract."); *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019) (quoting *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008) ("Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.")).

20

plaintiff and a third party.[31]  In other words, where "express binding agreements exist and define the parties' rights," an unjust enrichment claim cannot survive a motion to dismiss—whether such "express binding agreements" are between the parties or between the plaintiff or defendant and a third party.  *See, e.g.*, *Cal. Med.*, 114 Cal. Rptr. 2d at 125–26.

42.     Here, as to the four Pre-IPO HMAs, Interstate and Evolution entered into direct contracts with the PropCos expressly consenting to assignment of the HMAs and the post-assignment release of the PropCos.  Specifically, the Interstate Consent Letter expressly consented in advance to the Denver PropCo's assignment of its HMA, subject only to the right to preserve claims against the Denver PropCo for obligations arising *prior to* the assignment.  *See* Proof of Claim No. 657, Ex. A (Interstate Consent Letter).[32]  Similarly, pursuant to the terms of the Orlando, Pasadena, and Embassy Anaheim HMAs and Queen Mary consent letter, Evolution affirmatively consented in advance to the assignment of such HMAs to the Master Lessees, inclusive of a release of the PropCos' liability for any and all post-assignment obligations arising under the HMAs.  As a result of these direct, express contracts between the Hotel Managers and the PropCos—which released the PropCos from the very post-assignment liability under the HMAs that the Hotel Managers now seek to impose—no unjust enrichment claim can survive Federal Rule(b)(6).

---

[31] *See, e.g.*, *Florey*, 31 F. Supp. 3d at 1050 (dismissing unjust enrichment claim with prejudice where it was "clear that the parties' rights to payment were the subject of [express contracts]," despite the fact that defendants were not parties to such contracts and despite plaintiff's assertion that the suit was not based on such contracts); *Attebury Grain LLC v. Grayn Co.*, 721 F. App'x 669, 672 (9th Cir. 2018) (where relationship between plaintiff and third party was defined by contract, unjust enrichment action could not lie against alleged alter egos or successors to such third party premised on third party's breach of such contract); *Paracor Finance, Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (unjust enrichment claim of plaintiff investors based on "equitable subrogation" to defendant's rights was precluded where "the subject matter of the . . . dispute - the debenture offering - [was] covered by several valid and enforceable written contracts," even though no valid contract existed between plaintiffs and defendant); *Cal. Med.*, 114 Cal. Rptr. 2d at 127 (plaintiff's unjust enrichment claim failed not only because the conduct at issue was the subject of express contracts with non-defendant third parties, but also because "any benefit conferred upon defendants by [plaintiffs] was simply an incident to [plaintiffs'] performance of their own obligations" under existing contracts with third parties); *Mitten v. Weston*, 615 P.2d 60, 61 (Colo. App. 1980) (same).

[32] Macon Declaration, Exhibit A.

43.     The unjust claim for alleged damages under the three Post-IPO HMAs likewise fails as a matter of law.    After having expressly consented to the PropCo assignments of the Pre-IPO HMA and the release of the PropCos from contractual liability, Evolution entered into additional Post-IPO HMAs directly with certain other Master Lessees.    These agreements expressly dictated that the Master Lessees—rather than the PropCos—would be responsible for all obligations arising under those HMAs.    Such agreements simply "exclude [the Hotel Managers'] theory" of unjust enrichment.    *Cal. Med.*, 114 Cal. Rptr. 2d at 125–26; Complaint, ¶¶ 24, 26, & 28–30.[33]    For these reasons, Evolution cannot sustain an unjust enrichment claim, and Count II of the Complaint must therefore be dismissed with prejudice.

44.     Finally, because Count III (Claim Allowance) is premised on the success of Counts I and II, Count III must also be dismissed with prejudice.

## **CONCLUSION**

45.     For the foregoing reasons, all three counts of the Complaint should be dismissed with prejudice.

[*Remainder of Page Blank - Signature to Follow*]

---

[33] *See also supra* note 12.  Further, the Hotel Managers' allegation that the PropCos were unjustly enriched by the (few) rent payments made by the Master Lessees under the Master Leases is misplaced and immaterial.  *See Mitten*, 615 P.2d at 61 (plaintiff could not recover under unjust enrichment theory where alleged "benefit" was paid to defendant by third party "pursuant to the terms of an express contract" between those parties and "[defendant]'s entitlement" to such payment was "defined by the terms of this express contract").

63827/0001-43003694v9

May 23, 2022

**COLE SCHOTZ P.C.**

*/s/ G. David Dean*
G. David Dean (No. 6403)
Sophie E. Macon (No. 6562)
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 652-3131
Facsimile: (302) 574-2103
Email:       ddean@coleschotz.com
                smacon@coleschotz.com

*Counsel to Liquidating Trustee*